GULLY, STATE TAX COLLECTOR FOR MISSISSIPPI, *v.* FIRST NATIONAL BANK IN MERIDIAN.

No. 29. Argued October 19, 1936.—Decided November 9, 1936.

*Mr. J. C. Floyd* for petitioner.

*Mr. R. E. Wilbourn,* with whom *Mr. A. S. Bozeman* was on the brief, for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

Whether a federal court has jurisdiction of this suit as one arising under the Constitution and laws of the United States is the single question here.

Petitioner, plaintiff in the court below, sued the respondent in a state court in Mississippi to recover a money judgment. The following facts appear on the face of the complaint: In June, 1931, the assets of the First National Bank *of* Meridian, a national banking association, were conveyed to the respondent, the First National Bank *in* Meridian, under a contract whereby the debts and liabilities of the grantor, insolvent at the time and in the hands of a receiver, were assumed by the grantee, which covenanted to pay them. Among the debts and liabilities so assumed were moneys owing to the petitioner, the state Collector of Taxes, or now claimed to be owing to him, for state, county, city, and school district taxes. In form the assessment was imposed upon the shares or capital stock of the bank, its surplus and undivided profits, exclusive of the value of the real estate. In law, so the pleader states, all taxes thus assessed were debts owing by the shareholders, which the bank was under a duty to pay as their agent out of moneys belonging to them, then in its possession.

The new bank, in violation of its covenant, failed to pay the taxes of the old bank, which it had thus assumed and made its own. Judgment is demanded for the moneys due under the contract.

A petition was filed by the respondent for the removal of the cause to the federal court upon the ground that the suit was one arising "under the Constitution or laws of the United States." Judicial Code § 28, 28 U. S. C. § 71; *cf.* Judicial Code § 24 (1) (a), 28 U. S. C. § 41. The state court made an order accordingly, and the federal District Court denied a motion to remand. Later, after a trial upon the merits, the complaint was dismissed. The Circuit Court of Appeals for the Fifth Circuit affirmed the judgment of dismissal, overruling the objection that the cause was one triable in the courts of Mississippi. 81 F. (2d) 502. The decision was put upon the ground that the power to lay a tax upon the shares of national banks has its origin and measure in the provisions of a federal statute (R. S. § 5219, 12 U. S. C. § 548), and that by necessary implication a plaintiff counts upon the statute in suing for the tax. Because of the importance of the ruling, this Court granted certiorari, "limited to the question of the jurisdiction of the District Court."

How and when a case arises "under the Constitution or laws of the United States" has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. *Starin* v. *New York,* 115 U. S. 248, 257; *First National Bank* v. *Williams,* 252 U. S. 504, 512. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. *Ibid; King County* v. *Seattle School District,* 263

U. S. 361, 363, 364. A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto (*New Orleans* v. *Benjamin,* 153 U. S. 411, 424; *Defiance Water Co.* v. *Defiance,* 191 U. S. 184, 191; *Joy* v. *St. Louis,* 201 U. S. 332; *Denver* v. *New York Trust Co.,* 229 U. S. 123, 133), and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. *Tennessee* v. *Union & Planters Bank,* 152 U. S. 454; *Louisville & Nashville R. Co.* v. *Mottley,* 211 U. S. 149; *The Fair* v. *Kohler Die & Specialty Co.,* 228 U. S. 22, 25; *Taylor* v. *Anderson,* 234 U. S. 74. Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense. *Devine* v. *Los Angeles,* 202 U. S. 313, 334; *The Fair* v. *Kohler Die & Specialty Co., supra.*

Looking backward we can see that the early cases were less exacting than the recent ones in respect of some of these conditions. If a federal right was pleaded, the question was not always asked whether it was likely to be disputed. This is seen particularly in suits by or against a corporation deriving its charter from an act of Congress. *Osborn* v. *Bank of the United States,* 9 Wheat. 738, 817–828; *Pacific Railroad Removal Cases,* 115 U. S. 1, 11. Modern statutes have greatly diminished the importance of those decisions by narrowing their scope. *Gay* v. *Ruff,* 292 U. S. 25, 35; *Puerto Rico* v. *Russell & Co.,* 288 U. S. 476, 483. Federal incorporation is now abolished as a ground of federal jurisdiction except where the United States holds more than one-half the stock. Act of February 13, 1925, c. 229, § 12, 43 Stat. 936, 941. Partly under the influence of statutes disclosing a new legislative policy, partly under the influence of more liberal decisions, the probable course

of the trial, the real substance of the controversy, has taken on a new significance. "A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends." *Shulthis* v. *McDougal*, 225 U. S. 561, 569. *Cf. First National Bank* v. *Williams, supra; Hopkins* v. *Walker*, 244 U. S. 486, 489; *Shoshone Mining Co.* v. *Rutter*, 177 U. S. 505, 507. Only recently we said after full consideration that the doctrine of the charter cases was to be treated as exceptional, though within their special field there was no thought to disturb them. *Puerto Rico* v. *Russell & Co., supra.* "We should fly in the face of this legislative policy and disregard precedents which we think controlling were we to extend the doctrine now." *Ibid.* Today, even more clearly than in the past, "the federal nature of the right to be established is decisive—not the source of the authority to establish it." *Ibid.*

Viewing the case at hand against this background of established principle, we do not find in it the elements of federal jurisdiction.

1. The suit is built upon a contract which in point of obligation has its genesis in the law of Mississippi. A covenant for a valuable consideration to pay another's debts is valid and enforcible without reference to a federal law. For all that the complaint informs us, the failure to make payment was owing to lack of funds or to a belief that a stranger to the contract had no standing as a suitor or to other objections non-federal in their nature. There is no necessary connection between the enforcement of such a contract according to its terms and the existence of a controversy arising under federal law.

2. The obligation of the contract being a creation of the state, the question remains whether the plaintiff counts upon a federal right in support of his claim that the contract has been broken. The performance owing by the defendant was payment of the valid debts, and taxes are not valid debts unless lawfully imposed. From this defendant argues that a federal controversy exists, the tax being laid upon a national bank or upon the shareholders therein, and for that reason being void unless permitted by the federal law.

Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit. The tax here in controversy if valid as a tax at all, was imposed under the authority of a statute of Mississippi. The federal law did not attempt to impose it or to confer upon the tax collector authority to sue for it. True, the tax, though assessed through the action of the state, must be consistent with the federal statute consenting, subject to restrictions, that such assessments may be made. R. S. § 5219, 12 U. S. C. § 548. It must also be consistent with the Constitution of the United States. *McCulloch* v. *Maryland*, 4 Wheat. 316; *Owensboro National Bank* v. *Owensboro*, 173 U. S. 664; *Baltimore National Bank* v. *Tax Commission*, 297 U. S. 209. If there were no federal law permitting the taxation of shares in national banks, a suit to recover such a tax would not be one arising under the Constitution of the United States, though the bank would have the aid of the Constitution when it came to its defense. *Tennessee* v. *Union & Planters Bank, supra; Sawyer* v. *Kochersperger,* 170 U. S. 303; *Arkansas* v. *Kansas & Texas Coal Co.,* 183 U. S. 185; *Louisville & Nashville R. Co.* v. *Mottley, supra.* That there *is* a federal law permitting such taxation does not change the basis of the suit, which is still the statute of the state, though the federal law is evidence to prove the statute valid.

The argument for the respondent proceeds on the assumption that because permission at times is preliminary to action the two are to be classed as one. But the assumption will not stand. A suit does not arise under a law renouncing a defense, though the result of the renunciation is an extension of the area of legislative power which will cause the suitor to prevail. Let us suppose an amendment of the Constitution by which the states are left at liberty to levy taxes on the income derived from federal securities, or to lay imposts and duties at their pleasure upon imports and exports. If such an amendment were adopted, a suit to recover taxes or duties imposed by the state law would not be one arising under the Constitution of the United States, though in the absence of the amendment the duty or the tax would fail. We recur to the test announced in *Puerto Rico* v. *Russell & Co., supra:* "The federal nature of the right to be established is decisive—not the source of the authority to establish it." Here the right to be established is one created by the state. If that is so, it is unimportant that federal consent is the source of state authority. To reach the underlying law we do not travel back so far. By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby. *Louisville & Nashville R. Co.* v. *Mottley, supra.* With no greater reason can it be said to arise thereunder because permitted thereby.

Another line of reasoning will lead us to the same conclusion. The Mississippi law provides, in harmony with the act of Congress (R. S. § 5219), that a tax upon the shares of national banks shall be assessed upon the shareholders, though the bank may be liable to pay it as their agent, charging their account with moneys thus ex-

pended. Code of Mississippi, § 3138. *Cf. Home Savings Bank* v. *Des Moines,* 205 U. S. 503, 518; *Aberdeen Bank* v. *Chehalis County,* 166 U. S. 440; *National Bank* v. *Commonwealth,* 9 Wall. 353. Petitioner will have to prove that the state law has been obeyed before the question will be reached whether anything in its provisions or in administrative conduct under it is inconsistent with the federal rule. If what was done by the taxing officers in levying the tax in suit did not amount in substance under the law of Mississippi to an assessment of the shareholders, but in substance as well as in form was an assessment of the bank alone, the conclusion will be inescapable that there was neither tax nor debt, apart from any barriers that Congress may have built. On the other hand, a finding upon evidence that the Mississippi law has been obeyed may compose the controversy altogether, leaving no room for a contention that the federal law has been infringed. The most one can say is that a question of federal law is lurking in the background, just as farther in the background there lurks a question of constitutional law, the question of state power in our federal form of government. A dispute so doubtful and conjectural, so far removed from plain necessity, is unavailing to extinguish the jurisdiction of the states.

This Court has had occasion to point out how futile is the attempt to define a "cause of action" without reference to the context. *United States* v. *Memphis Cotton Oil Co.,* 288 U. S. 62, 67, 68. To define broadly and in the abstract "a case arising under the Constitution or laws of the United States" has hazards of a kindred order. What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation. One could carry the search for causes backward, almost without end. *Bird* v. *St. Paul F. & M. In-*

*surance Co.*, 224 N. Y. 47, 51; 120 N. E. 86; *Leyland Shipping Co.* v. *Norwich Fire Insurance Society*, (1918) A. C. 350, 369; *Insurance Co.* v. *Boon*, 95 U. S. 117, 130; *Milwaukee & St. Paul Ry. Co.* v. *Kellogg*, 94 U. S. 469, 474. Instead, there has been a selective process which picks the substantial causes out of the web and lays the other ones aside. As in problems of causation, so here in the search for the underlying law. If we follow the ascent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by.

The judgment should be reversed and the cause remitted to the District Court with instructions to remand it to the court in Mississippi from which it was removed.

*Reversed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.